IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | 8:07CR264 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | SENTENCING MEMORANDUM |
| KENDRA HUBEL, | ) | |
| | ) | |
| Defendant. | ) | |

This Sentencing Memorandum supplements findings made on the record at defendant's sentencing hearing on December 12, 2008.

**I.   BACKGROUND**

Defendant was charged with conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841 and 846. That offense carries a statutory mandatory minimum sentence of five years to a maximum of forty years.

Pursuant to a cooperation plea agreement, she entered a plea of guilty to the charge.  21 U.S.C. § 841(b)(1)(B).  In the plea agreement, the parties agreed that the defendant should be held responsible beyond a reasonable doubt for more than 50 grams but less than 200 grams of a mixture or substance containing a detectable amount of methamphetamine.  The government agreed to move for a three-level downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a).  The parties further agreed that the defendant was not subject to either an upward or downward adjustment in the offense level pursuant to U.S.S.G. § 3B1.1 or 3B1.2 and that the defendant did not possess a firearm or other dangerous weapon in connection with the offense under

U.S.S.G. § 2D1.1(b)(1).  The government further agreed to take her cooperation into consideration in connection with either U.S.S.G. § 5K1.1, 18 U.S.C. § 3552(e), or Fed. R. Crim. P. 35(b).

The United States Office of Probation (hereinafter, "the Probation Office") prepared a Presentence Investigation Report (hereinafter, "PSR") that calculated the defendant's sentence under the United States Sentencing Guidelines ("Guidelines").  Filing No. 71, PSR.  The facts outlined in the PSR are gleaned from the prosecutor's version of events. *Id*. at 4.  The PSR relates that a cooperating witness contacted the defendant's co-defendant, Timothy Noer, to purchase methamphetamine.  *Id.*  Officers observed Noer selling the cooperating witness 26.8 grams of methamphetamine and later arrested Noer. *Id.*  Noer identified Hubel as his supplier.  *Id.*  The defendant submitted the following version of events to the Probation Office:  "I have a methamphetamine addiction, which I supported by selling drugs for my boyfriend who supplied drugs for my use."  *Id.* at 5.

The Probation Office identified U.S.S.G. § 2D1.1(a)(3)(c)(7) as the applicable base offense level provision under the Guidelines and determined that defendant's base offense level should be 26 under that provision.  *Id.* at 11.  It determined that the defendant met the criteria for application of the "safety valve," U.S.S.G. § 5C1.2(a)(1)-(5), and reduced the offense level by 2 levels.  *Id.* at 6.  The Probation Office then subtracted three levels for the defendant's acceptance of responsibility under U.S.S.G. § 3E1.1, resulting in a total offense level of 21.  *Id.* at 7.  It then determined that defendant's criminal history category was I, as the result of 1 criminal history point assessed for negligent child abuse.  *Id.* at 7-8. Under the Guidelines, the defendant's sentencing range of imprisonment is 37 to 46 months.

The government adopted the findings in the PSR. Filing No. 45. Hubel objected to the PSR and moved for a downward departure under U.S.S.G. § 5K2.0 based on her age, her mental condition and aberrant behavior, or a variance under 18 U.S.C. § 3553. Filing No. 51. At her first sentencing hearing on January 4, 2008, defendant moved for a continuance to complete her treatment. Filing No. 57, Transcript of Sentencing Proceeding. The court received evidence of defendant's progress in drug rehabilitation treatment at NOVA Therapeutic and Santa Monica Place. *Id.* at 6. The government had no objection to the continuance for completion of treatment and stated that the defendant had provided "good" and "truthful information" in her safety valve interview and that she was "on the right path." *Id.* at 17-18, 20. The court continued the defendant's sentencing to facilitate her further cooperation and to allow her to complete her drug rehabilitation treatment. *Id.* at 20. With no objection from the government, the matter was again continued to allow the defendant, who had then completed treatment at Santa Monica Place half-way house, to pursue treatment at the Poppleton three-quarter way house and to reside there for six months. Filing No. 63, Motion for Continuance; Filing No. 65, Minute Entry.

The defendant now moves for an outside-Guidelines sentence by reason of her extraordinary rehabilitation.

**II. DISCUSSION**

    **A. Law**

The Sentencing Guidelines are no longer mandatory. *United States v. Booker,* 543 U.S. 220, 260-61 (2005). In *Booker,* the Supreme Court held that the mandatory Sentencing Guidelines system violated the Sixth Amendment. *Booker,* 543 U.S. at 226-27.

In the *Booker* remedial opinion, the Supreme Court determined that the constitutional violation would be cured by modifying the federal sentencing statute to make the Guidelines effectively advisory. *Id.* at 245. Consequently, the range of choice in sentencing dictated by the facts of the case has been significantly broadened. *Gall v. United States,* 552 U.S. —, —, 128 S. Ct. 586, 602 (2007) (finding a sentence outside the Guidelines to be reasonable); *Kimbrough v. United States,* 552 U.S. —, —, 128 S. Ct. 558, 570 (2007) (noting that courts may vary from Guidelines ranges based solely on policy considerations, including disagreements with the Guidelines); *Rita v. United States,* 551 U.S. —, —, 127 S. Ct. 2456, 2465 (2007) (holding that a district court may consider arguments that "the Guidelines sentence itself fails properly to reflect § 3553(a) considerations"); *Cunningham v. California,* 549 U.S. 270, —, 127 S. Ct. 856, 867 (2007) (stating that judges are no longer tied to the sentencing range indicated in the Guidelines but are obliged to "take account of" that range along with the sentencing goals Congress enumerated in 18 U.S.C. § 3553(a) of the Sentencing Reform Act). District courts must therefore "give respectful consideration to the Guidelines," but are permitted "'to tailor the sentence in light of other statutory concerns as well.'" *Kimbrough*, 552 U.S. at —, 128 S. Ct. at 570 (*quoting Booker,* 543 U.S. at 245-246); *Gall,* — U.S. at —, 128 S. Ct. at 596 (stating "[t]he Guidelines are not the only consideration, the district judge should consider all of the § 3553(a) factors"). These cases "mean that the district court is free to make its own reasonable application of the § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines." *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 577 (Scalia, J., concurring).

The Sentencing Reform Act "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing, including 'to reflect the seriousness of the offense,' 'to promote respect for the law,' 'to provide just punishment for the offense,' 'to afford adequate deterrence to criminal conduct,' and 'to protect the public from further crimes of the defendant.'" *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 570 *(quoting* 18 U.S.C. § 3553(a)). The statute further provides that "in determining the appropriate sentence, the court should consider a number of factors, including 'the nature and circumstances of the offense,' 'the history and characteristics of the defendant,' 'the sentencing range established' by the Guidelines, 'any pertinent policy statement' issued by the Sentencing Commission pursuant to its statutory authority, and 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *Id. (quoting* 18 U.S.C. § 3553(a)). A sentencing judge has greater familiarity with an individual case and individual defendant than the Commission or the appeals court and is "therefore 'in a superior position to find facts and judge their import under § 3353(a)' in each particular case." *Id.*, 552 U.S. at —, 128 S. Ct. at 574 *(quoting Gall,* 552 U.S. at —, 128 S. Ct. at 597).

Although the Guidelines remain "the starting point and the initial benchmark" in determining a sentence, the district court "may not presume that the Guidelines range is reasonable," but must "make an individualized assessment based on the facts presented." *Gall,* 552 U.S. at —, 128 S. Ct. at 596-97. "[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by

5

a party." *Id.,* 552 U.S. at —, 128 S. Ct. at 596. If the court decides that an outside-Guidelines sentence is warranted, the court must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. *Id.* The Supreme Court rejects, however, the notion that "'extraordinary' circumstances [are required] to justify a sentence outside the Guidelines range" and rejects "the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Id.* at 595.

Congress established the Sentencing Commission ("the Commission") "to formulate and constantly refine national sentencing standards," in fulfillment of its important institutional role. *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 57; *Rita v. United States,* 551 U.S. at —, 127 S. Ct. at 2464. When operating within that institutional role, the Sentencing Commission "has the capacity courts lack" and can "'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise.'" *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574 (*quoting* [United States v. Pruitt, 502 F.3d 1154, 1171 (10th Cir. 2007)](#) (McConnell, J., concurring)). In formulating the Guidelines, the Commission developed and used data on past practices and recidivism. *See* United States Sentencing Commission, Fifteen Years of Guidelines Sentencing (Nov. 2004) ("Fifteen-Year Assessment") at 14; U.S.S.G. § 1A.1, intro. comment., pt. A, ¶ 3; *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 567. *Gall,* 552 U.S. at —, 128 S. Ct. at 594 (noting that the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions"). Based on these sentencing statistics, the Commission established the offense levels for each

crime, linked to a recommended imprisonment range. Fifteen-Year Assessment at 14. Accordingly, in many cases the Guidelines represent a reasonable estimation of a fair sentencing range. *See Kimbrough,* 128 S. Ct. at 574.

For policy reasons, and to conform to statutory mandatory minimum sentences, the Commission did not employ its characteristic empirical approach when setting the Guidelines ranges for drug offenses. *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 567; Fifteen-Year Assessment at 15, 72-73. Instead, the Commission attempted "to accommodate and, to the extent possible, rationalize mandatory minimum provisions established by the 1986 Anti-Drug Abuse Act" by anchoring the Guidelines to the mandatory minimum sentences. United States Sentencing Commission, Special Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System (August 1991), accessed at www.ussc.gov/reports.htm (hereinafter, "Mand. Min. Rep't"), Summary at ii; Rep't at 17 n. 58.

The Commission thus adopted "the 1986 [Anti-Drug-Abuse] Act's weight-driven scheme." *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 567; *see United States v. Chapman, 500 U.S. 453, 461 (1991)* (stating that the Anti-Drug Abuse Act of 1986 provided for mandatory minimum sentences based on the weight of various controlled substances according to a "market-oriented" approach, creating a penalty scheme intended to punish large-volume drug traffickers severely). "The 1986 Act uses the weight of the drugs involved in the offense as the sole proxy to identify 'major' and 'serious' dealers."[1]

---

[1] Although both the mandatory minimum statutes and the Guidelines calibrate punishment of drug traffickers according to quantity, the Supreme Court has acknowledged that mandatory minimum sentences are both structurally and functionally at odds with sentencing guidelines and the goals the Guidelines seek to achieve, noting that "the guidelines produce a system of finely calibrated sentences with proportional increases whereas the mandatory minimums result in 'cliffs.'" *Neal,* 516 U.S. at 291 (1996). Nonetheless,

*Kimbrough,* 128 S. Ct. at 567. The resulting Guidelines ranges for drug trafficking offenses are driven by the quantity of drugs, and keyed to statutory mandatory minimum sentences based on weight. *Gall,* 128 S. Ct. at 594 & n.2; *Neal v. United States,* 516 U.S. 284, 291-92 (1996) (noting that in spite of "incongruities between the Guidelines and the mandatory sentencing statute," the Commission developed Guidelines to parallel the mandatory minimum sentences set out in 21 U.S.C. § 841(b)(1), using the quantities and sentences derived from the statute and "[t]he weight ranges reflect the Commission's assessment of equivalent culpability among defendants who traffic in different types of drugs . . . ").

Noting that larger drug dealers were subject to a mandatory minimum of ten years for a first offense and twenty years for a subsequent conviction for the same offense, the Sentencing Commission stated that "[the Act] sought to cover mid-level players in the drug distribution chain by providing a mandatory minimum penalty of five years." *Id.* at 10. Later, in "[p]erhaps the most far-reaching provision of the Omnibus Anti-Drug Abuse Act of 1988," Congress made the mandatory minimum penalties that were previously applicable to substantive distribution and importation/exportation offenses apply also to conspiracies to commit those substantive offenses, increasing "the potential that the applicable penalties could apply equally to the major dealer and the mid- or low-level participant." *Id.* at 10.

The fairness of the Guidelines is heavily dependent on fair and reasonably consistent charging policies in the Department of Justice. Fifteen-Year Assessment at 23-24. To that end, prosecutors have been directed to "charge and pursue the most serious,

---

the Supreme Court has continued to affirm the scheme, leaving it to Congress to correct its disparities. *Id.*; *United States v. LaBonte,* 520 U.S. 751, 764 (1997).

readily provable offense or offenses that are supported by the facts of the case, except in limited, enumerated circumstances."[2] *Id.* at 24. Empirical evidence shows that charging and plea bargaining practices continue to introduce significant disparities into the sentencing regime. Fifteen-Year Assessment, Executive Summary at xii. The Commission has acknowledged that often "the value of a mandatory minimum sentence lies not in its imposition, but in its value as a bargaining chip to be given away in return for the resource-saving plea from the defendant to a more leniently sanctioned charge." Mand. Min. Rep't at 14-15. The Commission also acknowledges that "[s]ince the power to determine the charge of conviction rests exclusively with the prosecution for the 85 percent of the cases that do not proceed to trial, mandatory minimums transfer sentencing power from the court to the prosecution" and "to the extent that prosecutorial discretion is exercised with preference to some and not to others," disparity is reintroduced into the system. Mand. Min. Rep't at 1; *see also* Fifteen-Year Assessment at 89 (noting that research over the past fifteen years has "consistently found that mandatory penalty statutes are used inconsistently in cases in which they appear to apply").

With respect to the type of sentence imposed, the Supreme Court recognizes that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms. *Gall,* 552 U.S. at —, 128 S. Ct. at 595. Nevertheless, offenders on probation are subject to several substantial restrictions on their liberty, including provisions

---

[2] In this court's experience, the Department of Justice does not always "charge and pursue the most readily provable" (beyond a reasonable doubt) crime, especially in drug prosecutions, with the result of introducing more disparity in the system. *See Booker*, 125 S. Ct. at 782 & n.11 (Stevens, J., dissenting in part) (gathering authorities and noting that "a prosecutor who need only prove an enhancing fact by a preponderance of evidence has more bargaining power than if required to prove the same fact beyond a reasonable doubt").

requiring that they may not leave the judicial district, move, or change jobs without notifying their probation officer or the court, that they report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, refrain from excessive drinking, and submit to drug testing.  *Id.*  A sentence of probation rather than incarceration can work to promote the sentencing goal of respect for the law by illustrating a rejection of the view that the law is merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing.  *Gall,* 552 U.S. at 599.

In the Eighth Circuit, "precedents prior to Gall 'routinely' rejected as unreasonable those variances that resulted in a sentence of probation when the guidelines recommend a term of imprisonment," but the appeals court now recognizes that a sentence of probation is permissible for a drug trafficking offense that calls for imprisonment under the advisory Guidelines under certain compelling circumstances.  *United States v. Lehmann,* 513 F.3d 805, 809 (8th Cir. 2008) (finding that evidence that a defendant's incarceration would have a very negative effect on the emotional development of a defendant's young son, is the sort of "compelling family circumstance" that would justify probation for a drug trafficker with a Guidelines range of 30-37 months' imprisonment); *United States v. McFarlin*, 535 F.3d 808, 809-10 (8th Cir. 2008)*; United States v. Shy,* 538 F.3d 933, 938 (8th Cir. 2008).

Because the Sentencing Commission accounted for ordinary post-offense rehabilitation in providing an adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1, a defendant's rehabilitation must be exceptional enough to be atypical in order

to warrant a departure on that basis. *See United States v. Rogers*, 400 F.3d 640 (8th Cir. 2005). However, factors that were discouraged or prohibited as departure factors under the mandatory Guidelines may be considered in connection with the § 3553(a) analysis. *United States v. Lazenby*, 439 F.3d 928, 933 (8th Cir. 2006). "[P]re-*Booker* departures and post-*Booker* variances are not the same" and there may be "cases that would not justify a departure under the Guidelines but which are appropriate for a variance" as well as "cases in which a combination of a Guidelines departure and other § 3553(a) factors may produce a lower reasonable sentence than a departure alone." *United States v. Robinson*, 454 F.3d 839, 842 (8th Cir. 2006). A defendant's post-arrest rehabilitation "is relevant in evaluating the § 3553(a) factors. *Shy,* 538 F.3d at 938 (affirming a variance to probation for extraordinary post-arrest rehabilitation, noting that rehabilitation was genuine and the defendant was a postive contributor to society); *McFarlin*, 535 F.3d at 811 (affirming variance to probation based on health and extraordinary post-arrest rehabilitation).

    **B. Analysis**

        **1. Initial Guidelines Calculation**

The court adopts the findings in the PSR and finds that defendant's base offense level under the Guidelines is 21, her criminal history category is I and her Guidelines sentencing range is 37 to 46 months.

        **2. Departure**

The court grants the defendant's motion for a downward departure. For the reasons discussed below in connection with the 3553(a) factors, the court finds the defendant's rehabilitation is exceptional enough to be atypical and warrants a departure under U.S.S.G. § 5K2.0.

### 3.  18 U.S.C. § 3553(a) Factors

Hubel moves for an outside-Guidelines sentence by reason of her extraordinary post-arrest rehabilitation.  In consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a), the court finds that a sentence of time served, followed by a term of supervised release of five years,  is sufficient, but not greater than necessary to accomplish the goals of sentencing in this case.

With respect to the nature of the offense and the circumstances of the crime, the court notes that drug distribution is a serious crime.  However, this case involves distribution of small quantities of methamphetamine.  The defendant's crime did not involve weapons or violence.  The evidence shows that the defendant sold drugs at the behest of her boyfriend, who used her to shield himself from prosecution.  There is no evidence of any far-reaching conspiracy and the defendant has cooperated with the government and provided significant assistance.  Ms. Hubel was involved in the enterprise for only one month.

The court has also considered the history and characteristics of the defendant.  *See* 18 U.S.C. § 3553(a)(1).  Ms. Hubel is presently 23 years old.  She had an unstable home life as a child and was the victim of sexual abuse.  She has had a long-standing addiction to methamphetamine, which she began using at age 13.  She has been involved in several manipulative and abusive relationships with men.  She has successfully completed an inpatient drug abuse treatment program at NOVA, as well as a rigorous treatment at Santa Monica Place and then Poppleton House.   In this court's experience, very few defendants successfully complete the NOVA program and even fewer successfully complete the rigorous treatment program at Santa Monica Place.  Hubel  has exhibited responsibility for

her actions and has shown self-reliance. Also, she has exposed herself to considerable risk in cooperating with the government. She has no criminal record other than a charge of child neglect that was a result of her addiction. As a result of that conviction, her parental rights were terminated and her son, who is now four and a half years old, has been adopted by her sister. She is now making efforts to establish a relationship with her son. Under the circumstances, Ms. Hubel should be held as an example to similarly situated offenders that rehabilitation is the important objective in their lives.

The court finds this sentence satisfies the general purposes of sentencing, including the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. Ms. Hubel was incarcerated for a short period of time and then entered the residential program at NOVA. The residential program at NOVA is a rigorous program with a substantial restriction of freedom. The fact of her arrest and incarceration will deter others from engaging in similar conduct. The deterrent effect of any further incarceration would be of marginal value. Because Ms. Hubel appears to appreciate the gravity of her offense, has made substantial gains in overcoming her addition, has refrained from using drugs or alcohol, and has participated in counseling and mental health treatment, there does not appear to be a great need to protect the public from Hubel's further crimes. The court's imposition of a five-year period of supervised release that includes stringent conditions of supervision, continued participation in her drug-abuse program and random drug tests, ensures Hubel's adherence to a law-abiding lifestyle. Moreover, the court has the authority to incarcerate Hubel in the future should she fail to comply with the terms of supervised release.

This sentence also fulfills the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. See 18 U.S.C. § 3553(a)(2). Ms. Hubel's recovery is ongoing and incarceration at this time would interfere with her rehabilitation.

With respect to the "the kinds of sentences available," 18 U.S.C. § 3553(a)(3), the court has the authority to impose a sentence that does not include continued incarceration in certain circumstances. This is a case that presents compelling circumstances that call for a sentence outside the advisory Guidelines. The court has considered the Sentencing Guidelines, but, because they were promulgated pursuant to Congressional directive rather than by application of the Sentencing Commission's unique area of expertise, the court affords them less deference than it would to empirically-grounded Guidelines. *See Kimbrough*, 552 U.S. at —, 128 S. Ct. at 574-75. The Guidelines' quantity-driven, "market-oriented" approach is not a proxy for culpability in every case, nor does it always correlate to the purposes of sentencing under 18 U.S.C. § 3553(a). Drug quantity is only an accurate measure when it corresponds to a defendant's position in the typical hierarchy that characterizes most drug conspiracies. Where the defendant falls in this hierarchy is an important factor in the court's assessment of a defendant's ultimate culpability. Although the quantity-based system was designed to punish bigger distributors more harshly, charging practices and the government's control over the number and amount of controlled buys from undercover or cooperating agents can result in an erroneous impression that a long-term, small-quantity distributor is a large-quantity distributor. Here, there is no dispute that the defendant was only a low- to mid-level distributor. She was an

addict recruited by her manipulative boyfriend to act as a go-between in drug transactions. She provided significant cooperation to the government.

Hubel's co-defendant, who provided no cooperation to the government and had a criminal record, was sentenced to 84 months' imprisonment. To sentence Ms. Hubel to a sentence within the Guidelines range in this case would not accurately reflect the court's assessment of the defendant's culpability. In consideration of the need to avoid unwarranted disparity in sentencing, the court finds that a sentence of time-served followed by lengthy supervised release is in line with the sentences of other low-level drug-distribution conspirators with similar levels of culpability who have shown extraordinary rehabilitation.

The court finds the evidence establishes that Hubel's rehabilitation has been extraordinary. The government agrees that the defendant has done very well since her arrest and is "on the right path." Not all defendants who are provided the option of chemical dependency treatment take advantage of the opportunity to the extent that Ms. Hubel has. It is unusual for the government to concur that a defendant has shown extraordinary rehabilitation. Also, it is rare that a drug offender will complete drug treatment programs as demanding as these. The court appreciates the difficulty of a defendant's overcoming a long-standing addiction, especially to methamphetamine. Ms. Hubel's case is one of the unusual cases in which the court can envision a positive result. Ms. Hubel is now employed and is functioning as a productive member of society. The court finds that Hubel's efforts at recovery and rehabilitation are atypical and exceptional and the court will accordingly grant the defendant's motion for a variance from the

Guidelines sentencing range. The court finds a sentence to time served, followed by a term of supervised release of five years is appropriate in this case.

### III. CONCLUSION

The court finds that to sentence this defendant to the term recommended under the Guidelines would violate the Sentencing Reform Act's "overarching" instruction that the court impose a sentence sufficient, but not greater than necessary, to accomplish the goals of sentencing. For the reasons stated above, the court finds defendant Kendra Hubel should be sentenced to time served, followed by five years of supervised release. A Judgment of Conviction in conformity with this Sentencing Memorandum will issue this date.

DATED this 30th day of December, 2008.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge